UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Barbara Loomis and Henry Payne, individually and on behalf of other similarly situated employees,<br><br>                  Plaintiffs,<br><br>vs.<br><br>CUSA LLC d/b/a Coach America, CUSA ES, LLC d/b/a Coach America Crew Transport, and d/b/a Express Shuttle, and CUSA CSS, LLC, d/b/a Crew Shuttle Service,<br><br>                  Defendants. | Court File No. 09-cv-00026-AJB<br><br>**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT AND DISMISSAL WITH PREJUDICE** |

COMES NOW Plaintiffs and Defendants, above-named, and in support of their Joint Motion for Approval of Settlement and Dismissal with Prejudice, state as follows:

1. Plaintiffs filed this case on January 7, 2009, against Defendants CUSA LLC d/b/a Coach America and CUSA ES, LLC d/b/a Coach America Crew Transport and d/b/a Express Shuttle alleging violations of the Fair Labor Standards Act's ("FLSA") overtime provisions with respect to compensation of Defendants' rail crew transportation over-the-road drivers. Plaintiffs' pleadings were later amended to add CUSA CSS, LLC d/b/a Crew Shuttle Service as an additional defendant (collectively referred to with CUSA LLC and CUSA ES, LLC as "Defendants").

2. Plaintiffs sought to recover unpaid overtime wages, liquidated damages or pre-judgment interest, and attorneys' fees and costs. Defendants denied that they had

improperly paid any current or former employees, and denied that any current or former employees were entitled to any additional compensation or other relief.

3. Following conditional certification of this litigation as a collective action pursuant to 29 U.S.C. § 216(b), 774 individuals filed consent forms to join this litigation as "party plaintiffs."[1] The parties engaged in significant discovery, including the exchange of thousands of documents reflecting hours worked, electronic compensation records, and detailed records regarding Defendants' transportation operations. Plaintiffs also conducted depositions of Defendants' management personnel.

4. After counsel for the parties had the opportunity to review the hours-worked data and other information produced in discovery, and to analyze the pertinent legal and factual issues, the parties participated in Court-ordered mediation before Magistrate Judge Boylan on February 3, 2010. After additional negotiations in the following weeks, the parties reached agreement with respect to the terms of settlement.

5. The entirety of the parties' proposed settlement is set forth in their Joint Stipulation of Settlement and Dismissal with Prejudice and referenced exhibits ("the Stipulation") filed contemporaneously with this Memorandum and incorporated herein by reference, and their Confidential Settlement Payment Schedule ("the Schedule") submitted contemporaneously to the Court under seal and incorporated herein by reference. The total settlement amount has been allocated to individual plaintiffs pursuant to an equitable formula based on hours-worked data analyzed for mediation,

---

[1] Of the 774 individuals who filed consent forms to join this lawsuit as "party plaintiffs," 12 of them subsequently withdrew their consents in writing.

each plaintiff's tenure of employment within the applicable limitations period in consideration of the date of filing of his or her consent form, and relevant compensation data.

6. Plaintiffs' counsel has engaged in significant efforts to notify each plaintiff of his/her share of the settlement. As a result of such efforts, 716 of the total number of 762 plaintiffs have elected to accept their allocated share of the total settlement amount as set forth in the Schedule. Of the remaining 46 plaintiffs, 9 have not responded in any way to counsel's communications. An additional 36 individuals who filed consent forms to join this litigation have been determined to be ineligible to participate in the settlement.

7. Only one plaintiff has rejected the settlement offer. Opt-in plaintiff Matt Olive ("the Rejector") served written objections on Plaintiffs' Counsel during the settlement notice period, along with his rejection.[2] As reflected in the Rejector's written objections, his intent was to reject the CUSA Defendants' settlement offer if his objections were overruled. Plaintiffs' counsel has considered the Rejector's objections and finds them to be without merit, for the reasons discussed in this memorandum and particularly in light of the overwhelming acceptance of the settlement by other eligible Plaintiffs. The parties agree that the Rejector has rejected his settlement offer, and pursuant to the parties' Joint Stipulation of Settlement and Dismissal with Prejudice ("the Stipulation") filed concurrently herewith, upon approval of the terms of the Stipulation

---

[2] The Rejector's written objections, which are being submitted to the Court under seal, are Exhibit 1 hereto.

and dismissal of the Lawsuit, his claims should be dismissed without prejudice, and he will have thirty days following the Court's entry of Final Judgment of Dismissal based on the Stipulation to re-file his claims in an appropriate jurisdiction, if he elects to do so.

8.  Under a private enforcement action under Section 216(b) of the FLSA, a district court may approve a settlement reached as a result of contested litigation to resolve a bona fide dispute between the parties over FLSA coverage. Lynn's Food Stores v. United States, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing Brooklyn Savings Bank, 324 U.S. 697 (1945)). The court must be satisfied that the settlement was the product of contested litigation, and that the settlement involves a fair and reasonable resolution of a bona fide dispute between the parties over FLSA coverage. Lynn's Food Stores, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the court may approve the settlement in order to promote the policy of encouraging settlement of litigation. Id.

9.  The terms of settlement in this case were only reached after aggressive litigation by counsel on both sides who are experienced in FLSA litigation. Significant discovery was conducted. Prior to the mediation, the parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in the case. Accordingly, the Court should conclude that the proposed settlement was the product of contested litigation, based upon a bona fide dispute between the parties. As noted in Lynn's Food Stores, "initiation of the action by the employees provides some assurance of an adversarial context." 679 F.2d at 1354.

10. "The primary consideration in determining whether a settlement is fair and reasonable is the strength and nature of the claim in light of the possible defenses." Brask v. Heartland Automotive Servs., Inc., 2006 WL 2524212, at *2 (D. Minn., Aug. 15, 2006). Other factors to be considered include the complexity, expense and duration of the litigation; the stage of the proceedings and the amount of discovery complete; the risks of establishing liability and damages; and the amount of the settlement fund compared to the possible recovery at trial, given the risk of litigation. Id.

11. The settlement was reached only after significant litigation involving motion practice and extensive discovery. The settlement was the result of arm's length negotiation by experienced, capable attorneys on both sides, negotiations facilitated by the Court. The parties also sharply disagreed over the proper computation of alleged damages. Under these circumstances, a presumption of fairness should attach to the proposed settlement. See Lynn's Food Stores, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness).

12. The public policy in favor of settlements, particularly in complex cases where substantial resources can be conserved by avoiding the time, cost and rigor of protracted litigation, further supports a presumption of fairness in this case. See Lynn's Food Stores, 679 F.2d at 1354 (recognizing policy of encouraging settlement of FLSA litigation); Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1149 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

13. Plaintiffs' claims and Defendants' defenses arise out of an unsettled and evolving area of law, and the parties to this action adopted starkly conflicting positions on the applicability of relevant exemptions and defenses. These are complex issues of FLSA coverage that hinge on detailed legal analysis and numerous disputed fact issues, and the Court's determination would radically affect the amount of damages at stake. This factor supports the reasonableness of the settlement agreement in this case.

14. The proposed settlement also brings immediate value to those individuals who elected to join this litigation. The immediate benefits that will be made certain by the settlement weigh in favor of the Court's approval of the proposed settlement. See In re Bankamerica Corp. Securities Litigation, 210 F.R.D. 694, 701 (E.D. Mo. 2002).

15. Plaintiffs' counsel have gained a comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and have ample evidence on which to base an informed assessment of the proposed settlement. Based on their knowledge of the case and the applicable law, as well as their experience in similar FLSA actions, counsel believe the settlement is fair, reasonable and adequate. "Although the Court is not bound by the counsel's opinion, their opinion is nonetheless entitled to great weight." In re BankAmerica, 210 F.R.D. at 702.

16. The parties' agreement with respect to the award of attorneys' fees calculated on a contingent fee percentage and out-of-pocket costs, as set forth in the Schedule, is also reasonable. The amount of fees and costs requested is consistent with the fee agreements signed by the two named Plaintiffs, and identical agreements individually signed by the opt-in plaintiffs. Under the fee agreements, Plaintiffs' counsel

is entitled to one-third (33 1/3%) of any monetary damages recovered as a result of the lawsuit. Plaintiffs' counsel agreed to carry the out-of-pocket expenses, also recoverable only if Plaintiffs were to prevail. In addition to the legal services agreements signed by Plaintiffs, this stipulation is justified by the 1,395 hours expended by Plaintiffs' counsel to date. Under these circumstances, the requested fee award in this case is reasonable.

17.   For the foregoing reasons, the parties respectfully request that the Court grant approval to the proposed FLSA collective action settlement and enter judgment, consistent with the terms of the Stipulation and the proposed order submitted to the Court.

Date: July 12, 2010

     *s/ Charles G. Frohman*
Donald H. Nichols, MN Bar No. 78918
Paul J. Lukas, MN Bar No. 22084X
Charles G. Frohman, MN Bar No. 0386695
frohman@nka.com
**NICHOLS KASTER, PLLP**
4600 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone: (612) 256-3200
Facsimile:  (612) 215-6870

**ATTORNEYS FOR PLAINTIFFS**

Date: July 12, 2010

     *s/ Jeffrey A. Timmerman*
Andrew J. Voss (#0241556)
avoss@littler.com
Noah G. Lipschultz (#0387308)
nlipschultz@littler.com
Jeffrey A. Timmerman (#0352561)
jtimmerman@littler.com
**LITTLER MENDELSON, P.C.**
1300 IDS Center
80 South 8th Street
Minneapolis, MN  55402.2136
Telephone: 612.630.1000
Facsimile:  612.630.9626

**ATTORNEYS FOR DEFENDANTS**

Firmwide:96221458.1 046923.1044